## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

RICHARD BANKHEAD,           )
                               )
      Plaintiff,             )
                               )
v.                             )
                             )   CASE NO. 3:07CV208-MHT
AMERICAN SUZUKI MOTOR  )
CORPORATION            )
                             )
      Defendant.          )

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant American Suzuki Motor Corporation ("ASMC") hereby submits the following brief in support of its motion for summary judgment as to all of Plaintiff's claims. ASMC moves for summary judgment on each of Plaintiff's claims, including claims made pursuant to Alabama's Extended Manufacturer's Liability Doctrine ("AEMLD"), breach of warranty, negligence, and wantonness on the grounds that plaintiff has failed to disclose a testifying expert witness, whose testimony is required under Alabama law as a prerequisite for this product liability action.  As such, there is no genuine issue of material fact, and ASMC is entitled to summary judgment in its favor as a matter of law.

### STATEMENT OF UNDISPUTED FACTS

The motorcycle in question is a 2006 Suzuki GSX-R750 motorcycle, VIN No. JS1GR7KA862108568.  On or about August 2, 2006, plaintiff Richard Bankhead was involved in an motorcycle accident while riding the 2006 Suzuki GSX-R750 motorcycle.  See Exhibit A, Complaint at ¶¶ 6-7.  Plaintiff filed a Complaint on January 30, 2007, alleging that the motorcycle was defective and unreasonably dangerous because of the ". . . wiring harness of the

starter catching fire during reasonable, foreseeable and ordinary use." Id. at ¶ 14.  Plaintiff

brought claims against ASMC for violation of the Alabama Extended Manufacturer's Liability

Doctrine, breach of implied warranty, negligence, and wantonness.  Id. at ¶¶ 10-30.

On April 4, 2007, this Court entered an Uniform Scheduling Order.  See Exhibit B,

Uniform Scheduling Order, at § 8.  The Order set forth a August 6, 2007 deadline for Plaintiff to

disclose experts, including full Rule 26 information and a summary of opinions:

> The parties shall disclose to each other the identity of ANY person
> who may be used at trial to present evidence under Rules 701, 702,
> 703, or 705 of the Federal Rules of Evidence, and provide the
> reports of retained experts or witnesses whose duties as an
> employee of the party regularly involved giving expert testimony,
> required by Rule 26 (a)(2) of the Federal Rules of Civil Procedure.
>
> From the plaintiff(s) on or before August 6, 2007.
> From the defendant(s) on or before October 8, 2007.

Id.  Plaintiff has not formally identified any expert or provided any Rule 26 information.

On September 24, 2007, ASMC's retained expert, Richard Oxton, inspected the accident

scene and the subject motorcycle.  See Exhibit C, Initial Report of Richard Oxton.  Mr. Oxton

concluded from his investigation, that the accident was caused by Mr. Bankhead's improper

operation of the motorcycle.  Id.  Of specific importance to this motion, Mr. Oxton concluded

that "[t]here is no evidence of a fire or heat related damage to any portion of the motorcycle."

Id.  ASMC complied with the Court's scheduling order by filing a Rule 26 expert disclosure on

October 8, 2007.

**STANDARD OF REVIEW**

Summary judgment is proper where there is no genuine issue of material fact, and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ P. 56.  The burden of proof

is on the movant to establish that there is no genuine issue of material fact.  Celotex Corp. v.

Catrett, 477 U.S. 317, 324, (1986).  If the movant makes such a showing, then the burden shifts

to the non-movant to prove that there is a material fact in dispute. Id. "Fed. R. Civ P. 56 (e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp, 477 U.S. at 324.

## GROUNDS FOR SUMMARY JUDGMENT

Pursuant to the Uniform Scheduling Order entered by the Court on April 4, 2007, Plaintiff was required to identify his expert witnesses by August 6, 2007. See Exhibit B, at § 8. Defendant has been hampered in its defense of this case due to uncertainty as to whether the Plaintiff is claiming a design defect or a manufacturing defect. The Plaintiff has had ample opportunity to develop his case and disclose his experts. However, to date (more than three months after the date by which plaintiff was required by this Court to make expert disclosures and make such experts available for deposition), Plaintiff has failed to identify any expert witnesses he intends to utilize at the time of trial. As such, and based on Alabama case law, Plaintiff cannot meet his burden in proving any of the causes of action listed in the Complaint. Therefore, summary judgment should be granted in this matter as to Plaintiff's claims (1) under the AEMLD, (2) for negligence, (3) wantonness, and (4) for breach of implied warranty.

**I.     Summary Judgment is Appropriate for Plaintiff's AEMLD Claims Because Plaintiff is Required to Provide Expert Testimony in this Case.**

ASMC is entitled to summary judgment because Plaintiff has not offered expert evidence in support of his claim that the starter and electrical system in the subject 2006 Suzuki motorcycle were defective and unreasonably dangerous. Proof of a product defect must be affirmatively shown. In the case of a complex product such as a motorcycle's electrical system, such proof must be in the form of expert testimony.

3

In order to establish a claim under the judicially created Alabama Extended Manufacturer's Liability Doctrine ("AEMLD")[1], a plaintiff must show that the defendant sold the product in a defective condition which made the product unreasonably dangerous to the ultimate user; that the defendant was engaged in the business of selling such product; and that the product reached the ultimate consumer without substantial change in condition. Bell v. T.R. Miller Mill Co., Inc., 768 So.2d 953 (Ala. 2000); Sapp v. Beech Aircraft Corp., 564 So.2d 418 (Ala. 1990)[2]. The burden of proof rests on the plaintiff to prove that the defendant released the product in an unreasonably dangerous condition and that it was that condition which caused the injury. Bell, 768 So.2d at 953; Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So.2d 991, 995 (Ala. 1981). The fact that the product failed in furthering or performing its intended use, or the fact of an injury, is not itself sufficient to prove liability. Townsend v. General Motors Corp., 642 So.2d 411 (Ala. 1994). In this case, Plaintiff has failed to come forward with sufficient proof to sustain a cause of action under the AEMLD.

A.    **Under the AEMLD Plaintiffs Must Prove that the Product is Unreasonably Dangerous.**

A prima facie case for liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") requires a plaintiff to show: (1) that a manufacturer manufactured, designed, or sold a defective, unreasonably dangerous product; (2) that the product reached the consumer in substantially the same condition in which it was sold; and (3) that the product injured the plaintiff when it was put to its intended use. Beam v. Tramco, Inc., 655 So.2d 979, 981 (Ala. 1995). "A defective product is one that is unreasonably dangerous, i.e., one that is not

---

[1] See Casreel v. Altec Indus., So. 2d 128 (Ala. 1976); Atkins v. Am. Motors Corp., 335 So.2d 134 (Ala. 1976).

[2] Since this is a diversity action, this Court should apply the substantive law of Alabama. Erie R.R. Co. v. Tompkins, 304 U.S. 64, (1938).

fit for its intended purpose or that does not meet the reasonable expectations of the parties." Id.

Alabama law clearly provides that:

> Under the AEMLD the manufacturer of a product is not an insurer against all harm that may be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product. Likewise, the failure of a product does not presuppose the existence of a defect. Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; **a defect in the product must be affirmatively shown**.

Townsend v. Gen. Motors Corp., 642 So.2d 411, 415 (Ala. 1994) (emphasis added); Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1128, 19931 (Ala. 1991); Sears, Roebuck & Co. v. Hover Hills Farms, Inc., 395 So.2d 991, 993 (Ala. 1981); Atkins v. American Motors Corp., 335 So.2d 134, 141 (Ala. 1976); Casrell v. Alltech Ind., Inc., 335 So.2d 128, 132 (Ala. 1976); Britt v. Chrysler Corp., 699 So.2d 179, 181 (Ala. Civ. App. 1997). For a seller of an allegedly defective product to be liable under the AEMLD, a seller must have been "in the business" of selling items of the kind in question. Mathis v. Harrell, Inc., 828 So.2d 248, 258 (Ala. 2002) (referencing Baugh v. Bradford, 529 So.2d 996, 999 (Ala. 1988)).

**B.      Expert Testimony is Ordinarily Required to Prove a Claim under the AEMLD.**

The Alabama Supreme Court requires a Plaintiff to use expert testimony to prove an alleged defect for complex and technical commodities. Townsend, 642 So.2d at 415. Case law is clear that expert testimony is required when the nature of the product is complex or technical:

> The evidence and testimony likely to prove the defect that which rendered the product not fit for its anticipated use and the defect's link to the Defendant, depend upon the nature of the facts, **but, ordinarily, expert testimony is required because of the complex and technical nature of the commodity.**

Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc., 395 So.2d 991, 995 (Ala. 1981) (emphasis added). In Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328 (Ala. 1991), the

plaintiffs argued that a motor vehicle's braking system was not a situation "so complex or complicated that an expert [was] necessary to explain the cause and effect of that situation to the jurors." Id. at 1333. The court found that "an automobile brake system is composed of, among other parts, calibers, rotors, discs, rear wheel cylinders, brake shoes, and master cylinders." Id. Since the system was not something that would be familiar to lay jurors, the court held lay jurors could not reasonably be expected to understand it and determine whether it was defective without the assistance of expert testimony. Id. at 1333; see also Verchot v. Gen. Motors Corp., 812 So.2d 296, 303-04 (Ala. 2001); Britt v. Chrysler Corporation, 699 So.2d 179, 181 (Ala. Civ. App. 1997) ("The airbag system involved in this case is comprised of clock spring sensors, diagnostic units, and an airbag/inflator unit. Therefore, we hold that an airbag system is precisely the type of complex and technical commodity that [requires] expert testimony to prove an alleged defect." )(internal quotes omitted).

"Proof of accident and injury alone is insufficient to establish fault under the AEMLD." Brooks, 479 So.2d at 1332. Therefore, plaintiffs are ordinarily required to provide expert testimony to prove a defect existed in a product, and if that expert testimony is not provided a defendant may be entitled to dismissal of plaintiffs' AEMLD cause of action.

### C.    Because Plaintiffs Offer no Expert Testimony, Their Claims Pursuant to the AEMLD must be Dismissed.

This case concerns whether a 2006 Suzuki GSX-R750 motorcycle was unreasonably dangerous. The characteristics, workings and mechanisms involved in the design and manufacture of a high performance motorcycle are clearly not within the knowledge of a lay juror. Specifically, the composition and manufacture of a motorcycle's electrical components are not within the knowledge of a lay juror. Therefore, expert testimony is required in this case

to show how the motorcycle was defective.  An apt comparison can be found in the <u>Brooks</u> case

cited above, which concerned an alleged brake failure:

> [A]n automobile brake system is composed of, among other parts, rotors, disks, rear wheel cylinders, brake shoes, and master cylinders; it is a system composed of parts that would not be familiar to the lay juror, and the lay juror could not reasonably be expected to understand that system and determine if it was defective, without the assistance of expert testimony.  **In essence, it is a system that appears to be precisely the type of complex and technical commodity that would require expert testimony to prove an alleged defect.**

<u>Brooks</u>, 579 So.2d at 1333 (emphasis added).  Modern day motorcycles are complex products,

and injuries from their use can be the result of a myriad of causes, most unrelated to the design or

mechanical integrity of the motorcycle.  Therefore, this case involves a system (motorcycle

electronics) "that appear[] to be precisely the type of complex and technical commodity that

would require expert testimony to prove an alleged defect." <u>Id</u>.

Plaintiff has offered no expert testimony in support of his claim that the Suzuki

motorcycle was defective and unreasonably dangerous because of the ". . . wiring harness of the

starter catching fire during reasonable, foreseeable and ordinary use." <u>See</u> Exhibit A, at ¶ 14.  In

contrast, ASMC's retained expert concluded from his investigation that the accident was caused

by Mr. Bankhead's improper and reckless operation of the motorcycle.  <u>See</u> Exhibit C.

Furthermore, ASMC's expert concluded that "[t]here is no evidence of a fire or heat related

damage to any portion of the motorcycle." <u>Id</u>.  Plaintiff's expert disclosure deadline has passed.

Since Plaintiff has not put forth any expert testimony in this regard either in support of the

allegations in the Complaint or to rebut the testimony of ASMC's expert, summary judgment is

appropriate as to all of plaintiff's claims under the AEMLD.

II.    **Plaintiff's Other Claims Based on Negligence, Wantonness and Breach of Implied Warranty Should Likewise Be Dismissed Due to the Lack of Expert Testimony.**

Aside from Plaintiff's claims pursuant to AEMLD, plaintiff brings causes of action for (1) negligence (2) wantonness, and (3) breach of implied warranty. However, since Plaintiff cannot prove that a defect (in design, manufacture, or warnings) exists, Plaintiff's other causes of action should also be dismissed.

A.    **Plaintiff's Claims for Negligence and Wantonness Should be Dismissed.**

To make a *prima facie* case for negligence, a plaintiff must provide substantial evidence that a defendant (a) breached (2) a duty, which (3) proximately caused (4) plaintiff's injury. Key v. Compass Bank, Inc., 826 So.2d 159 (Ala. Civ. App. 2001). Wantonness is the "conscious doing of some act or the omission of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission of such duty injury will likely or probably result." Savage Indus. v. Duke, 598 So.2d 856, 859 (Ala. 1992) (quoting Smith v. Bradford, 475 So.2d 526, 528-29 (Ala. 1986)); Ala. Code 1975 § 6-11-20(b)(3).

Alabama case law also demonstrates that expert testimony may be necessary in some negligence-based cases. In Britt v. Chrysler Corp., 699 So.2d 179 (Ala. Civ. App. 1997), plaintiff sued for breach of contract, breach of warranty, negligence, wantonness, and under the AEMLD when plaintiff was injured for the late deployment of an air bag. Id. at 180. The trial court granted summary judgment when the court ruled that plaintiffs' purported expert was not qualified to give opinions relating to airbag design and function. Id. The appellate court only discussed the need for expert testimony in terms of the AEMLD, but upheld the grant of summary judgment as to all claims. Id. at 181-83. Since the airbag system was complex and

beyond the knowledge of a lay juror, expert testimony was required to "prove the alleged defect in the airbag system." Id. at 183-84.[3]

In this matter, the complaint states causes of action arising in negligence and wantonness. However, as discussed, the mere happening of an accident is not enough to prove a defect, and without expert testimony, Plaintiff cannot show that the motorcycle was defective.  Therefore, Plaintiff cannot prove that the motorcycle was negligently designed, manufactured, etc. or that ASMC acted with wantonness.  If Plaintiff cannot prove that the motorcycle was defective in any way, Plaintiff cannot prove that there was a breach of any duty.  In this case, due to the complexity and technical aspects of the operating systems involved (motorcycle electronics), expert testimony is required because this information is beyond the knowledge of a lay juror. Since Plaintiff has failed to disclose an expert to support his claims, the claims based on theories of negligence and wantonness must be dismissed.

**B.    Plaintiff's Claims for Breach of Implied Warranty Should be Dismissed.**

Claims for breach of implied warranty are normally brought separate and distinct from an AEMLD claim.  See Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 111 (Ala. 2003).  Claims for breach of implied warranty of merchantability and fitness for a particular purpose are governed by § 7-2-315, Ala. Code 1975:  "[A] warranty that the good shall be merchantable is implied in a contact for their sale if the seller is a merchant with respect to goods of that kind."  To be considered "merchantable," goods must be "fit for the ordinary purposes for which such goods are used."  § 7-2-314(2)(c).  The warranty of fitness for a particular purpose "is implied if:  (1) the seller has reason to know the buyer's particular purpose; (2) the seller has

---

[3] It should also be pointed out that, to the extent plaintiff makes a claim for negligent failure to warn, "there is no duty to warn where a product is now shown to be dangerous when put to its intended use." Donnelly v. Club Car, Inc., 724 So.2d 25, 28 (Ala. Civ. App. 1998). Thus, since plaintiff provides no evidence of a defect, there can be no claim for a duty to warn.

reason to know that the buyer is relying on the seller's skill or judgment to furnish the appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment." See Ala. Code 1975 § 7-2-315.

However, in Ex Parte General Motors Corp., 769 So.2d 903 (Ala. 1999), the Alabama Supreme Court considered whether a consumer was allowed to assert claims against a manufacturer for breach of the manufacturer's implied warranties. Id. at 910. While the Court ultimately held that the plaintiff failed to properly assert claims for breach of implied warranties against the manufacturer, the court stated:

> In its opinion in the case, the Court of Civil Appeals held that under Alabama's version of the Uniform Commercial Code, implied warranties are applicable only to sellers. **We agree; that holding is an accurate statement of the law. If [plaintiff] had alleged a breach of an implied warranty as to [the manufacturer], a summary judgment would be proper as to any such claim.**

Id. (emphasis added). The Court of Civil Appeals had previously determined that a plaintiff could not pursue his claim against an automobile manufacturer because, as provided in the statute, the implied warranty of merchantability attaches only to the seller of the goods, not the manufacturer. Tucker v. General Motors Corp., 769 So.2d 895, 901 (Ala. Civ. App. 1998).

In Rose v. General Motors Corp., the United States District Court for the Northern District of Alabama applied these cases in holding:

> *Ex Parte General Motors* is a recent emphatic statement by the highest court in Alabama that the law in Alabama precludes actions by remote consumers against automobile manufacturers for breach of the implied warranty of merchantability, even in cases of personal injury.

Rose v. General Motors Corp., 323 F.Supp.2d 1244, 1248 (N.D. AL 2004). Therefore, since ASMC is not a seller of motorcycles under Alabama law, based on the holdings in Rose, Tucker, and Ex Parte GM, summary judgment is appropriate as to Plaintiff's claims for implied warranty.

10

In addition, Plaintiff, in his Complaint, alleges that the motorcycle was not reasonably fit and suitable for the purpose for which they were intended and that motorcycle was "manufactured, assembled, and sold in a dangerously defective and unsafe condition." <u>See</u> Exhibit A, at ¶¶ 23-28. Therefore, Plaintiff's theory for breach of implied warranty is based on whether or not the motorcycle was defective and unsafe. As previously discussed, absent expert testimony, Plaintiff cannot prove that the motorcycle was defective or unsafe. If Plaintiff cannot prove that the motorcycle was defective, then Plaintiff cannot prove that ASMC breached any implied warranty, and summary judgment is appropriate.

## CONCLUSION

As discussed, Plaintiff was required to disclose any testifying experts on or before August 6, 2007 (over three months ago), and failed to do so. Therefore, summary judgment is appropriate as to Plaintiff's AEMLD claims because Plaintiff has failed to provide expert testimony as required by Alabama case law. Further, since Plaintiff cannot prove a defect in the motorcycle, summary judgment should also be granted as to Plaintiff's other claims (negligence, wantonness, and breach of implied warranty.) In addition, ASMC is not a seller as defined by Alabama law and cannot be held liable for breach of implied warranty.

Based on the foregoing, and the fact that Plaintiff has not disclosed any experts in this matter to support their claims as required, ASMC respectfully ask this Honorable Court to grant Defendant's Motion for Summary Judgment and dismiss each and every count in Plaintiff's complaint with prejudice.

/s/ John D. Mayo
One of the Attorneys for Defendant
American Suzuki Motor Corporation

OF COUNSEL:
Jere F. White, Jr. (WHITJ1759)
S. Andrew Kelly (KELLS3760)
John D. Mayo (MAYOJ2469)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this the 19th day of November, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Zachary T. Collins, Esq.
207 Montgomery Street, Suite 215
Montgomery, Alabama  36104

Stewart S. Wilbanks, Esq.
Dillard & Associates, LLC
Fourth Floor, Berry Building
2015 2nd Avenue North
Birmingham, Alabama 35203

/s/ John D. Mayo
Of Counsel

ELECTRONICALLY FILED
11/30/2007 12:32 PM
CIRCUIT COURT OF
RUSSELL COUNTY, ALABAMA
KATHY S. COULTER, CLERK

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

| | |
|---|---|
| RICHARD BANKHEAD §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>AMERICAN SUZUKI MOTOR CORP. §<br>Fictitious Party "A", whose identity is §<br>presently unknown to the Plaintiffs, who is an §<br>entity, an individual or corporation §<br>responsible for the design, manufacture, §<br>testing or placing into service or marketing §<br>the Suzuki GSX 750 motorcycle, which is the §<br>subject of this litigation, Fictitious Party "B", §<br>whose identity is unknown to the Plaintiffs at §<br>this time, being that individual, entity or §<br>corporation responsible for the design, §<br>manufacture, testing of any component part of §<br>the Suzuki GSX 750 motorcycle, Fictitious §<br>Party "C", whose identity is unknown to §<br>Plaintiffs at this time, being that individual, §<br>entity or corporation responsible for §<br>designing, manufacturing, testing, marketing §<br>and/or selling any failing component part of §<br>the Suzuki GSX 750 motorcycle; §<br>§<br>Defendants. §<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.: CV-07- 900011 |

## COMPLAINT

## STATEMENT OF THE PARTIES

1.    Plaintiff, Richard Bankhead is over the age of nineteen (19) years old and a

resident citizen of Lee County, Alabama.

2.    Defendant, American Suzuki Motor Corporation ("Suzuki") is a foreign

corporation doing business by agent in the State of Alabama at large.  The principal address for



EXHIBIT

A

this Defendant is 3251 E. Imperial Hwy, Brea, California 92821. Suzuki is organized and incorporated in accordance with the laws of the state of California. Defendant Suzuki is in the business of manufacturing, assembling, and distributing motorcycles for use by ordinary customers such as the Plaintiff.

3.     Fictitious Defendants, A, B, and C, whose names are currently unknown to the Plaintiff but whose names will be supplemented when ascertained are jointly and severally responsible for the acts, wrongs, accusations, or omissions causing harm to the Plaintiff.

## STATEMENT OF JURISDICTION AND VENUE

4.     Jurisdiction is proper in this Honorable Court in that the Defendant, Suzuki, is doing business by agent in this State, has sufficient minimum contacts with this State such that it should reasonably anticipate defending this action in this State, and has purposefully availed itself of the benefits and privileges of the laws of this State such that it should reasonably anticipate being hailed into Court in this State.

5.     Venue is proper in this Honorable Court in that at all times material thereto, the acts, omissions, and conduct giving rise to this cause of action occurred in Russell County, Alabama.

## STATEMENT OF FACTS

6.     On August 1, 2006, Don and Geraldine Joseph, parents of Richard Bankhead, purchased a 2006 Suzuki GSX 750 motorcycle from Extreme Power Sports in Columbus, Georgia.

7.     On or about August 2, 2006, the Plaintiff, Richard Bankhead was driving the defective Suzuki GSZ 750 motorcycle at the time it caught fire causing him to leave the roadway. He suffered personal physical injuries, mental anguish, pain and suffering during and

2

following the accident.

8.      The Suzuki GSX 750 motorcycle was designed, engineered, inspected, manufactured, marketed, distributed and sold by Defendant Suzuki and the Fictitious Defendants. The identifying information on the defective motorcycle is "Suzuki GSX 750" The Suzuki motorcycle, which is the subject matter of this lawsuit, is defective in one or more of the following respects:  (a) improper design of the starter component; (b) the starter and wiring harness was improperly designed and manufactured creating an unreasonable and dangerous propensity to catch afire under normal and foreseeable circumstances; (c) failure to provide a reasonable and adequate warning to suppliers and users of the starters about the starter's propensity to catch afire; (d) marketing the motorcycle in such a way as to mislead consumers as to the safety, stability, and road worthiness of the motorcycle and its component parts; (e) improper and inadequate testing of the motorcycle and its components; (f) hiding from the public the true nature of the motorcycle and its components and its propensity to catch afire and cause a driver to lose control and be involved in potentially fatal accidents; (g) failing to properly train its employees in the proper inspection, manufacturing, and servicing of its motorcycles; (h) failing to design the subject motorcycle and starter component in a manner so as not catch afire under normal driving conditions and foreseeable service of the subject motorcycle; (i) failing to properly monitor sudden fire causes in its motorcycles and warn the public of its dangerous propensities; (j) failing to conduct proper testing of the subject motorcycle and/or its components to determine safety, stability, and fire resistance or otherwise determine suitability of the component parts of motorcycle which is the subject of this accident; (k) failing to manufacture the motorcycle in accordance with its specifications; and (l) failing to utilize sufficient materials, coverings, and other fire resistant supplies in the motorcycle design to avoid premature fires

3

from normal usage of motorcycles of this type.

9.     This accident was directly and/or proximately caused by the failure of the defective wiring in the starter on the subject motorcycle. Richard Bankhead suffered personal physical injury, mental anguish, pain and suffering as a proximate cause of this accident and claims damages for the same, including medical expenses.

## COUNT ONE--AEMLD

10.     Plaintiffs adopts and incorporates by reference all prior paragraphs of the Complaint as if set out here in full.

11.     Defendant Suzuki and the Fictitious Defendants, at all times relevant to this action, were engaged in the business of manufacturing, assembling, and distributing GSX 750 motorcycles for use in Alabama and elsewhere by ordinary consumers, and did manufacture and distribute the subject GSX 750 driven by Plaintiff at the time of the subject accident, and did disseminate information, advertisements, and promotions for the GSX 750 motorcycle in Alabama.

12.     Defendant Suzuki directed or controlled the acts and/or omissions of Fictitious Defendants in the design and manufacture of the subject motorcycle. Defendants Suzuki and the Fictitious Defendants participated in the design, development, testing, manufacturing and/or distribution of the subject motorcycle. Additionally, Defendant Suzuki directed or should have directed the quality control policies, practices and procedures of Fictitious Defendants.

13.     Plaintiff avers that the subject Suzuki GSX 750 motorcycle was expected to, and did, reach the consumer without substantial change from its condition at the time and place it left the control of the Defendants.

14.    Plaintiff avers that the subject Suzuki GSX 750 motorcycle was defectively designed, manufactured, and assembled resulting in the wiring harness of the starter catching fire during reasonable, foreseeable and ordinary use. The starter was a failing component of the subject motorcycle at the time of the accident.

15.    The subject Suzuki GSX 750 motorcycle was defective at the time it left the control of the Defendant, and these defects rendered the starter and motorcycle unreasonably dangerous when used as it was intended to be used by consumers, including Plaintiff, Richard Bankhead.

16.    The defective condition of the subject Suzuki GSX 750 motorcycle has been known by Defendants or should have been known by Defendants prior to the sale and distribution of the subject tire to the consumer. Defendant failed to warn of or correct the defective condition. Alternatively, the Defendant knew, should have known or did discover the defects in the subject motorcycle after placing same into production and into the stream of commerce and failed to timely warn the consumers, including Plaintiff Richard Bankhead and/or failed to timely recall the defective products.

17.    The unreasonably dangerous defects which existed in the subject Suzuki GSX 750 motorcycle, proximately caused the accident and injuries to Plaintiff, Richard Bankhead

**WHEREFORE**, Plaintiff demands judgment against the Defendants, including the Fictitious Defendants, in such an amount as the jury may award for compensatory and punitive damages, plus the cost of this action.

## COUNT TWO – NEGLIGENCE

18.    Plaintiff adopts and incorporates by reference all prior paragraphs of the Complaint as if set out here in full.

19.    Defendants negligently designed, manufactured, inspected, tested and distributed the subject GSX 750 motorcycle driven by Plaintiff on August 2, 2006.

20.    Defendants negligently warranted that the GSX 750 motorcycle was fit for ordinary use by consumers such as Plaintiff; that the manufacturing process resulted in a motorcycle for ordinary use; and that this motorcycle was not defective.

21.    Defendants negligently failed to correct or warn of the defective condition of the motorcycle, after it became known, or reasonably should have been known by the Defendants and negligently failed to properly control distribution of the defective motorcycle.

22.    As a proximate result of the Defendants negligent and/or wanton conduct, Plaintiff, Richard Bankhead, suffered personal physical injury, pain, and suffering, and incurred medical bills.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, including the Fictitious Defendants, in such an amount as the jury may award for compensatory damages, plus the cost of this action.

## COUNT THREE—WARRANTY CLAIM

23.    Plaintiff adopts and incorporates by reference all prior paragraphs of the Complaint as if set out here in full.

24.    Defendants, including fictitious defendants are sellers, as such term is defined under Section 7-2-103 of the *Alabama Code (2005)*, of motorcycles.

25.    Defendants, including fictitious defendants, did distribute and sell the subject GSX 750 motorcycle. The subject motorcycle made the basis of this action were subsequently sold, without modification, to a user or consumer for usage on the subject vehicle.

26.     Defendants, including fictitious defendants, warranted that the GSX 750 motorcycle was reasonably fit and suitable for the purpose for which they were intended to be used. Plaintiff avers that Defendants breached said warranty in that at the time the motorcycle was manufactured, assembled, and sold it was in a dangerously defective and unsafe condition.

27.     On August 2, 2006, the Suzuki GSX 750 made the basis of this action was in use having been driven by the Plaintiff, Richard Bankhead. Plaintiff was traveling on U.S. Hwy 280/431 at the intersection of Pierce Road in Phenix City, Alabama when said motorcycle suddenly caught fire causing the Plaintiff to lose control of the motorcycle and fall to the ground while traveling.

28.     The accident that injured Plaintiff, Richard Bankhead, was proximately and directly related to Defendants' breach of their implied warranty of fitness and suitability for the products intended use.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, including the fictitious defendants, in such an amount as the jury may award for compensatory and punitive damages, plus the cost of this action.

<u>**COUNT FOUR--WANTONESS**</u>

29.     Plaintiffs adopt and incorporate by reference all prior paragraphs of the Complaint as if set out here in full.

30.     Defendants conduct, including that of the fictitious defendants, was conduct carried on with a reckless or conscious disregard of the rights or safety of others. Said conduct proximately caused the personal injuries to Plaintiff, Richard Bankhead.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, including the fictitious defendants, in such an amount as the jury may award for compensatory and punitive damages, plus the cost of this action.

/s/ *Zachary T. Collins*
_____
ZACHARY T. COLLINS (COL126)

OF COUNSEL:

Zachary T. Collins, Attorney at Law, LLC
207 Montgomery Street, Suite 215
Montgomery, AL 36104
Phone: (334) 263-5575
Facsimile: (334) 263-5569

## JURY DEMAND

## PLAINTIFFS HEREBY DEMAND TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

/s/ *Zachary T. Collins*
_____
**OF COUNSEL**

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

RICHARD BANKHEAD,)

    Plaintiff,)

    v.)    3:07cv208-MHT

AMERICAN SUZUKI MOTOR)
CORPORATION,)

    Defendant.)

) CIVIL ACTION NO.

## UNIFORM SCHEDULING ORDER

    Please read this order carefully. These deadlines
and responsibilities may not be changed without leave of
court. All parties are expected to comply with each and
every provision of this order in a timely manner, and
extensions will be granted only in extraordinary and
unforeseeable circumstances. The parties are also
expected to comply with the Middle District's Local Rules
and the Middle District's Guidelines to Civil Discovery
Practice, both of which can be found at
http://www.almd.uscourts.gov/.

    Under Rule 16, Federal Rules of Civil Procedure, as
amended, the court is required to set a schedule for
discovery and the filing of motions. Accordingly, it is
ORDERED as follows:

    SECTION 1. A pretrial conference is scheduled for
the 24th day of March, 2008. This cause is set for trial
during the term of court commencing on the 12th day of
May, 2008.



EXHIBIT
B

SECTION 2. Dispositive motions, i.e., motions to dismiss or motions for summary judgment, shall be filed no later than 90 days prior to the pretrial hearing. A brief and all supporting evidence shall be filed with any such motion. In all briefs filed by any party relating to the motion, the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the ev idence can be found in a supporting deposition or document. Failure to make such specific reference will result in the evidence not being considered by the court.

SECTION 3. No later than 21 days after the dispositive motion deadline, counsel for all parties shall conduct a face-to-face settlement conference at which counsel shall engage in good faith settlement negotiations. If settlement cannot be reached, counsel shall also discuss whether mediation will assist the parties in reaching settlement. Not more than FIVE (5) DAYS after this conference, counsel for the plaintiff shall file a pleading titled "Notice Concerning Settlement Conference and Mediation". This pleading shall indicate whether settlement was reached and, if not, whether the parties believe mediation will assist them in resolving this case short of trial.

SECTION 4. Motions to amend the pleadings and to add parties shall be filed by the plaintiff(s), on or before May 15, 2007, and by the defendant(s) on or before May 15, 2007.

SECTION 5. Motions for class certification shall be filed on or before May 15, 2007. A brief addressing the factors enumerated in Rule 23(a), (b) and (g) of the Federal Rules of Civil Procedure shall be filed with any such motion.

SECTION 6. The failure to file a response to any motion -- either dispositive or non-dispositive -- within

the time allowed by the court shall indicate that there
is no opposition to the motion.

SECTION 7.   All discovery shall be completed on or
before December 3, 2007, except that, as to any witnesses
whose names are not revealed until the last day allowed
under SECTION 9 or whose names are not revealed with
sufficient time for the other parties to take a
deposition prior to the pretrial conference, the opposing
party shall have the deadline in this paragraph extended
to allow for deposing such witnesses.

SECTION 8.   The parties shall disclose to each other
the identity of ANY  person who may be used at trial to
present evidence under Rules 701, 702, 703, or 705 of the
Federal Rules of Evidence, and provide the reports of
retained experts or witnesses whose duties as an employee
of the party regularly involved giving expert testimony,
required by Rule 26(a)(2) of the Federal Rules of Civil
Procedure, as follows:

   From the plaintiff(s), on or before August 6, 2007.
   From the defendant(s), on or before October 8, 2007.

The parties shall comply fully with all requirements
of Rule 26(a)(2) in regard to disclosure of expert
testimony.

SECTION 9.    FORTY (40) DAYS BEFORE TRIAL, each party
shall, pursuant to the provisions of Rule 26(a)(3) of the
Federal Rules of Civil Procedure, file a list of the
names, addresses, and telephone numbers of all witnesses,
except witnesses to be used solely for impeachment
purposes, separately identifying those whom the party
expects to present and those whom the party may call if
the need arises.   The  witness list should include the
names of any witnesses required to be disclosed under
Section 8.  Unless specifically agreed between the
parties or allowed by the court for good cause shown, the

parties shall be precluded from calling any witness not so identified.

SECTION 10.   FORTY (40) DAYS BEFORE TRIAL, the parties shall, pursuant to the provisions of Rule 26(a)(3) of the Federal Rules of Civil Procedure, file deposition designations that the parties expect to use at trial.   Adverse parties shall within one week thereafter file deposition designations expected to be used in response, and a  party shall within three days of the designation of such responsive parts file the designation of any part that is de   sired as a rebuttal thereto. Unless specifically agreed between the parties or allowed by the court for good cause shown, the parties shall be precluded from using any part of a deposition or other document not so listed, with the exception of parts of depositions or documents to be used solely for the purpose of impeachment.   Except to the extent written objections are filed 14 days prior to the trial date, each party shall be deemed to have agreed that one of the conditions for admissibility under Rule 32 of the Federal Rules of Civil Procedure is satisfied with respect to any such deposition and that there is no objection to the testimony so designated.   Objections shall state with particularity the portions objected to, and the objecting party shall attach a copy of the portions to which the objections apply.

SECTION 11.    FORTY (40) DAYS BEFORE TRIAL, the parties shall, pursuant to the provisions of Rule 26(a)(3) of the Federal Rules of Civil Procedure, file exhibit lists and furnish opposing counsel for copying and inspection all exhibits and tangible evidence to be used at the trial.  <u>Proffering counsel shall have such evidence marked for identification prior to trial.</u> Unless specifically agreed between the parties or allowed by the court for good cause shown, the parties shall be precluded from offering such evidence not so furnished and identified, with the exception of evidence to be used solely for the purpose of impeachment.  Ex<u>cept to the</u>

extent written objections are filed, the evidence shall be deemed genuine and admissible in evidence. Objections shall be filed 14 days prior to the trial date, and shall set forth the grounds and legal authorities.      The offering party shall file a written response to the objections no later than 7 days prior to trial and shall include a premarked copy of the evidence at issue.

SECTION 12.  Except to the extent of any conflict with the deadlines set out herein, the discovery plan contained in the report of parties' planning meeting (Doc.  No. 6) is adopted and incorporated herein.

SECTION 13:  If a jury trial  The parties shall file any requested voir dire questions, motions in limine fully briefed, and any proposed jury instructions, together with citations of law thereon, on or before 14 days prior to the trial date unless said time is shortened by the court on motion of either party.  Trial counsel are directed to review the jury questionnaire used in this court and to avoid any duplication of matters addressed therein in their voir dire questions. The jury questionnaire is available on the court's website at http://www.almd.uscourts.gov/juryinfo.htm.

SECTION 14.  In cases involving jury trials, the term "trial date" as used in the foregoing deadlines shall mean the date set for jury selection.

SECTION 15.  GENERAL PROVISIONS:

(A) All briefs on any matter before the court must be formal in format and filed with the court.  The court does not accept "letter briefs" or "letter reports."

(B) A request or motion for extension of a deadline in any court order (i) must be in writing; (ii) must indicate that movant has, in a timely manner, previously contacted counsel for all other parties; and (iii), based on that contact, must state whether counsel for all other

parties agree to or oppose the extension request or motion.  A request or motion that fails to meet this requirement will be denied outright, unless the movant offers a credible explanation in the request or motion why this requirement has not been met.  Absent stated unforeseen and unavoidable circumstances beyond the control of the movant, oral extension requests and motions are not allowed, and "eleventh hour" extension requests and motions will be denied outright.

(C) The proposed order that a party desires the court to enter should be submitted to the court in both (i) an Adobe Acrobat  PDF format attachment to the motion and (ii) by transmitting an electronic copy of the proposed order to the court as an attachment to an email message sent to <propord_thompson@almd.uscourts.gov>.  For these purposes, the electronic copy should be in WordPerfect or Word format and not in Adobe Acrobat PDF format.

(D) If any party has an objection to these deadlines, the party should inform the court within 14 days from the date of this order; otherwise, the court will assume that the deadlines are agreeable to all parties.  Unless this order is modified by subsequent order of the court, the provisions hereinabove set out are binding on the parties.

DONE, this the 4th day of April, 2007.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

# INITIAL REPORT
# OF
# RICHARD OXTON

# BANKHEAD v. SUZUKI

OCTOBER 8, 2007

820 BUTTONWOOD DRIVE, FT. MYERS BEACH, FLORIDA  33931-2202
OFFICE  (239) 765-6200    □    FAX  (239) 765-6316



## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................2

II.     ACCIDENT OVERVIEW (AS REPORTED) ......................................2

III.    ALLEGATIONS..................................................................................2

IV.     INVESTIGATION

      a.   OPERATOR ...........................................................................2
      b.   MOTORCYCLE......................................................................2
      c.   ACCIDENT SITE....................................................................3

V.      CONCLUSIONS ................................................................................4

VI.     DOCUMENTS REVIEWED...............................................................4

VII.    APPENDIX.........................................................................................6

1

**INTRODUCTION**

I have been retained by John D. Mayo, Esq. of the firm of Lightfoot, Franklin and White, LLC in Birmingham, AL to investigate the circumstances surrounding the August 2, 2006 accident of Mr. Richard Bankhead. Mr. Bankhead was injured while riding his 2006 Suzuki GSX-R750 north on U.S. Highway 280/431. This is my initial report as a result of my investigation of this accident.

**ACCIDENT OVERVIEW (AS REPORTED)**

On August 1, 2006 Mr. Bankhead's parents made arrangements to purchase a 2006 Suzuki GSX-R750 for him. One day later on August 2, 2006 he picked up the subject motorcycle and was on his way to a friend's house when he lost control of his motorcycle and crashed. Mr. Bankhead lost control as he was leaving a stop light near the entrance to Home Depot on U.S. Highway 280/431. As reported in the police report Mr. Bankhead stated the motorcycle raised up and caught fire causing him to lose control, exit the highway and strike the ditch.

**ALLEGATIONS**

Plaintiffs allege improper design and manufacture of the starter and its wiring harness causing an unreasonable and dangerous propensity to catch fire under normal and foreseeable circumstances.

**INVESTIGATION**

**a. OPERATOR**

Mr. Bankhead was 19 years old on the date of the accident. He was employed by Extreme Power Sports in Columbus, GA at the time of the accident. Extreme Power Sports is the dealer that sold him the new Suzuki GSX-R750 motorcycle.

Mr. Bankhead sustained injuries to both of his arms, a shoulder, a knee and a finger during the accident.

**b. MOTORCYCLE**

The subject motorcycle is a 2006 Suzuki GSX-R750 high performance sport motorcycle. The motorcycle was delivered to Mr. Bankhead with 11 miles on the odometer from dealer test rides, and Mr. Bankhead had ridden it approximately 15 miles prior to the accident. The Suzuki GSX-R750 is capable of rapid acceleration and lifting of the front wheel if the operator so chooses.

Suzuki 2006 GSX-R750 Specifications:

| | |
|---|---|
| Engine type: | Inline four cylinder with dual overhead camshafts and 4 valves per cylinder |
| Engine size: | 750 cc |
| Cooling: | Liquid cooled |
| Transmission: | Six-speed transmission |
| Fuel system: | Fuel injection |
| Drive system: | Chain drive |

| Chassis: | | |
|---|---|---|
| | Weight | 360 pounds (dry) |
| | Length | 80.3 inches |
| | Width | 28.1 inches |
| | Height | 44.3 inches |
| | Seat height | 31.9 inches |
| | Wheel base | 55.1 inches |

The post-accident inspection revealed damage to the following parts:

Left hand front blinker
Left hand mirror
Shift lever
Scraped clutch lever
Scraped bar end weight
Scraped front rim (left hand side)
Left hand front foot peg
Left hand front peg mount
Front fender
Fairing mount
Fairing upper, middle and lower left hand side
Left engine cover
Charging stator
Stator wiring
Flywheel
Rear fender
Tail light bracket
Missing tail light lens
License plate mounting reflector

## c. ACCIDENT SITE

This accident occurred on the northbound lanes of U.S. Highway 280/431 near the Pierce Road intersection in Phenix City, AL. The road conditions were dry, however it was a cloudy day. The posted speed limit is 55 miles per hour.

3

## CONCLUSIONS

In my expert opinion this accident was caused by Mr. Bankhead's improper and wreckless operation of the motorcycle, which lead to the loss of control. This Suzuki GSX-R750 is a very high performance sport motorcycle capable of rapid acceleration and lifting the front wheel if the operator inputs such a request.

There is pavement rash on the rear fender, license plate mount and tail light indicating a straight up attitude of the motorcycle while lifting the front wheel. This indicates improper and wreckless operation of this motorcycle.

Road abrasions and fracturing damage to the left side of the motorcycle is from impacting and sliding down the highway. This damage to the left engine cover, stator and flywheel occurred while the engine was rotating causing the flywheel to contact the stator and damage the charging wires. Engine oil and crankcase vapors were allowed to escape from the damage to the cover during the time the motorcycle slid on its side to a stop and the engine stopped rotating. During this time the oil residue and vapors along with road debris were deposited on the left side of the motorcycle.

There is no evidence of a fire or heat related damage to any portion of the motorcycle.

## DOCUMENTS REVIEWED

| TYPE | SOURCE | DATE | COMMENT |
|------|--------|------|---------|
| PLEADING | PLAINTIFF | | COMPLAINT, STATEMENT OF THE PARTIES |
| PLEADING | PLAINTIFF | | RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES |
| REPORT | | 08/02/06 | ALABAMA UNIFORM TRAFFIC ACCIDENT REPORT |
| MISC | | 08/09/06 | COPY OF AUTO REPAIR ORDER |
| DEPOSITION | BANKHEAD, R. | 09/13/07 | DEPOSITION OF RICHARD BANKHEAD |
| PHOTO | | UNKNOWN | 9 (8 X 10) PHOTOS OF SCENE |
| PHOTO | OXTON, R. | 09/24/07 | VEHICLE AND SITE INSPECTIONS (1 PHOTO BOOK, 1 PHOTO CD) |

In addition to reviewing the above material, I inspected and photographed the subject motorcycle and the site of this accident on 9/24/07.

4

    If additional information becomes available from any source that alters any of my opinions, I will amend this report.

Richard Oxton

October 8, 2007

**<u>APPENDIX</u>**

RESUME……………………………………………………………………….i


4-YEAR CASE LIST…………………………………………………………..ii

# RESUME

**Personal:**

Richard H. Oxton
1145 Main Street
Ft. Myers Beach, FL 33931-2242

Married

Birth date:  December 2, 1951

**Education/Training:**

1966 - 70 Mehlville High School

Motorcycle training service seminars
Kawasaki, Ossa and Puch

1999 Public Safety Institute, IPTM, University of North Florida
Watercraft Crash Investigation & Accident Reconstruction

2004 Introtech Crash Reconstruction Services
Watercraft Crash Investigation & Incident Reconstruction

2004 Northwestern University – Center for Public Safety
Traffic Accident Reconstruction 1

2005 Northwestern University – Center for Public Safety
Traffic Accident Reconstruction 2

2006 Institute of Police Technology & Management, University
of North Florida
Investigation of Motorcycle Crashes

**Work Experience:**

1971 - 78 Cycle City Engineering Corp.
Service Writer and Parts Manager

1978 - 86   S&S Kawasaki
Owner, Service Manager, General Manager

1987 - Present   Associate with Ron Robbins
Accident Reconstruction, Accident Investigation, Videography,
Still photography
Set up and supervised numerous collisions of two moving vehicles
using automobiles, motorcycles and other recreational products.

2006 – Recreational Products Specialized Litigation Group of DRI
Invited Speaker on Accident Reconstruction

**Teaching Experience:**    1984 - 86  Jefferson Community College
Motorcycle repair and maintenance

2007 Management and Technical Training Educational Resources
West Virginia police officers training, Morgantown, &
Saint Albans, WV
ATV Accident Investigation

**Racing History:**    1970 - 74  Amateur motocross racing

1974 - 77 American Motorcyclist Association
Professional motocross racing

1975 - 78 American Motorcyclist Association
Professional Class "C" flat track racing

1976 - 87 American Motorcyclist Association
Ranked "A" rider Enduro

1976 - 87 Hare Scrambles

**Additional:**    1971- Present American Motorcyclist Association member

35 years Motorcycle riding experience

33 years All Terrain Vehicle riding experience

30 years Personal Watercraft riding experience

**Hobbies and Interests:**    Recreational & competition trail riding

Personal watercraft

Scuba diving, P.A.D.I. Certified

Sailing

Wind surfing

# RICK OXTON'S DEPOSITIONS AND TRIAL  10/05/03    TO PRESENT

| PLAINTIFF | DEFENDANT | DEPOSITION | DATE | TRIAL | DATE | LOCATION |
|---|---|---|---|---|---|---|
| BIXLER | KAWASAKI | YES | 5/11/2005 | NO | | AR |
| CLEGHORN | KAWASAKI | NO | | YES | 11/18/2005 | AL |
| DELLAMICO | KAWASAKI | YES | 8/17/2004 | NO | | CA |
| Eberts | KAWASAKI | YES | 1/14/2004 | NO | | ND |
| LOPEZ | KAWASAKI | YES | 11/17/2004 | NO | | NJ |
| RAY(HARRILL) | DUCATI,OHLINS & YAMAHA | YES | 6/22/2004 | NO | | CA |
| SAMUEL | FIEGER | YES | 11/9/2005 | NO | | MI |